## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

RONALD G. JOHNSON,                         :
                                           :
                 Plaintiff,                :
                                           :
         v.                                :     Civ. No. 08-196-LPS
                                           :
OFFICER BINGNEAR, et al.,                  :
                                           :
                 Defendants.               :

Ronald G. Johnson, Central Violation of Probation, Smyrna, Delaware, Pro Se Plaintiff.

Julie M. Sebring, Esquire, Darby & Sebring LLC, Wilmington, Delaware, and Harshal Purohit-Patel, Esquire, New Castle County Law Department, New Castle, Delaware, Attorneys for Defendants.

## MEMORANDUM OPINION

December 23, 2010
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.    **INTRODUCTION**

Plaintiff, Ronald G. Johnson ("Johnson"), an inmate at the Central Violation of Probation

in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was

granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 6)

Pending before the Court is a Motion for Summary Judgment filed by Defendants Officer

Bingnear ("Bingnear"), Officer Martinez ("Martinez"), Officer Provenza ("Provenza"), and the

New Castle Police Department ("Police Department") (collectively "Defendants") and Johnson's

Request for Counsel. (D.I. 30, 32) For the reasons that follow, the Court will grant Defendants'

Motion for Summary Judgment and will deny as moot Johnson's Request for Counsel.

## II.    **PROCEDURAL BACKGROUND**

In April 2008, Johnson filed his Complaint pursuant to 42 U.S.C. § 1983, alleging

Defendant police officers charged him with felonies to keep him in jail longer, even though his

crimes were misdemeanors, in order to illegally incarcerate him and increase his bail, knowing he

was unable to afford the costs.[1] Johnson alleges a lack of probable cause for arrest, false arrest,

and malicious prosecution. He also alleges the Police Department has policies to "over charge"

people by charging felonies for misdemeanor offenses and, further, that in every domestic dispute

---

[1]Section 1983 of Title 42 of the United States Code offers private citizens a means to
redress violations of federal law by state officials. "To state a claim under § 1983, a plaintiff must
allege the violation of a right secured by the Constitution and laws of the United States, and must
show that the alleged deprivation was committed by a person acting under color of state law."
*West v. Atkins*, 487 U.S. 42, 48 (1988). Johnson alleges violations of his Fourth and Fourteenth
Amendment rights based on his false arrest, malicious prosecution, excessive bail, and conspiracy.

someone must be arrested. He further contends this policy targets black males. The Court conducted an initial screening of the case and dismissed the State of Delaware. (D.I. 7, 8)

Defendants filed a Motion for Summary Judgment on December 4, 2009. On December 30, 2009, the Court directed Johnson to respond to the motion by January 14, 2010. Johnson was advised that if he did not file a response, the Court would decide the motion on the papers submitted. (D.I. 31) Johnson did not file a response. Instead, he filed a Request for Counsel, two weeks after expiration of the deadline to file his response to the Motion for Summary Judgment. (D.I. 32) After reviewing the file in June 2010 and discovering that Johnson had taken little to no action in the case, the Court ordered Johnson to show cause why the case should not be dismissed for failure to prosecute. (D.I. 38) Johnson timely responded to the Show Cause Order. (D.I. 40) The Court will not address the Show Cause Order and response because the case will be disposed of on its merits.

On September 24, 2010 Johnson inquired of the case status and sought a new scheduling order. (D.I. 45) In turn, on September 30, 2010, the Court provided Johnson with a copy of Defendants' pending motion for summary judgment and entered a new briefing schedule. (D.I. 48) Johnson was given until October 22, 2010 to respond to the dispositive motion. Rather than respond, Johnson sought additional discovery, contrary to the Court's admonition in its September 30th Order that it contained the final extension and that future requests for more time would be denied. (D.I. 50) Johnson's latest motion was denied on November 2, 2010. (D.I. 52)

## III.     FACTUAL BACKGROUND

On September 24, 2007, Provenza, a New Castle County Police officer, responded to an address in New Castle, Delaware, to investigate a no contact order issued between Johnson and his girlfriend, Kelly Roache ("Roache.").[2] Investigation revealed that Johnson had appeared at Roache's residence the night before to obtain his belongings. An altercation occurred when Johnson grabbed Roache by the shirt after Roache told Johnson to leave. In addition, Johnson made repeated telephone contact to Roache and used obscene language. Provenza heard twelve messages from Johnson and saw four telephone calls from him on the caller I.D. Notably, while Provenza was conducting her investigation, Johnson telephoned. Provenza spoke to him and advised him that he was not to contact the residence by any means, that a warrant had issued for his arrest, and to turn himself in or he would be arrested at his brother's home. Johnson was arrested and arraigned on September 27, 2007. He was charged with aggravated harassment, offensive touching, and breach of release. A Delaware Justice of the Peace Court judge ordered a $6,000 secured bail and no contact with Roache. (D.I. 30 ex. A)

On November 29, 2007, Bingnear, a New Castle County police officer responded to Roache's home and investigated new violations of the effective no contact order issued against Johnson. At the time, Johnson was being held at the Howard R. Young Correctional Institutional ("HRYCI") in Wilmington, Delaware, pending trial, but had been sending letters to Roache asking her not to testify against him. Bingnear's investigation revealed that Johnson had sent a total of six letters either addressed to Roache or her daughter, all with the title "Esq." This was done in an apparent effort to avoid having his mail read by the HRYCI staff. In one letter, Johnson stated

---

[2]There were active cross no contact orders, entered September 7, 2007.

3

that if Roache's daughter did not appear, his case would be thrown out, and he offered money to

Roache and her daughter. Arrest warrants were sought by Bingnear and issued by a judge. Later

on November 29, 2007, Johnson was arraigned in the Delaware Justice of the Peace Court. He

was charged with noncompliance with conditions of recognizance bond, four charges of breach of

release, and one charge of offering a bribe to a witness. The judge ordered a $7,000 secure bail

and Johnson remained incarcerated. On November 30, 2007, Martinez reviewed Bingnear's

police report, but had no further involvement in the arrest of Johnson. (*Id.* at exs. B, C)


## IV.   **STANDARD OF REVIEW**

A grant of summary judgment is appropriate only where "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56©). The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

n.10 (1986). "When considering whether there exist genuine issues of material fact, the court is

required to examine the evidence of record in the light most favorable to the party opposing

summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*,

476 F.3d 180, 184 (3d Cir. 2007). The "mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment;" a

factual dispute is genuine only where "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

If the moving party has carried its burden, the nonmovant must then "come forward with specific

4

facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal

quotation marks omitted). Moreover, "the issue of material fact required by Rule 56©) to be

present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of

the party asserting its existence; rather, all that is required is that sufficient evidence supporting

the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *Anderson,* 477 U.S. at 248-49 (internal quotation marks omitted).

Despite the numerous extensions of time granted by the Court, Johnson failed to respond

to the Motion for Summary Judgment. Nonetheless, the Court will not grant the entry of

summary judgment without considering the merits of Defendants' unopposed Motion. *See*

*Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that district court "should

not have granted summary judgment solely on the basis that a motion for summary judgment was

not opposed").


## V.    **DISCUSSION**

### A.    *Non Sui Juris*

Johnson alleges that it is the practice of the Police Department to "over charge" people

with felonies for misdemeanor offenses. He further contends the Police Department has a policy

that in every domestic dispute someone must be arrested and the targets are black males.

Defendants contend that Johnson failed to file suit against the proper governmental entity and,

therefore, summary judgment must be granted in favor of the Police Department.

"[I]f the board or department is not a corporate body it cannot be sued as such, e.g., a

police board." *Breitigan v. State of Delaware*, 2003 WL 21663676, at *2 (D. Del. July 16,

2003), *aff'd*, 293 F. App'x 871 (3d Cir. Sept. 24, 2008) (not published). The Police Department

is not a separate entity for purposes of suit but, rather, it is a division of a distinct department

within the New Castle County government. 9 Del. C. §§ 1331, 1332; *Breitigan*, 2003 WL

21663676, at *2; *Morse v. New Castle County Police Dep't*, 2007 WL 471182 (D. Del. Feb. 8,

2007) (dismissing case upon finding that New Castle County Police Department is non-suable

entity).

Inasmuch as the Police Department is *non sui juris*, the claims against the Police

Department must be dismissed.


**B.      Personal Involvement/Respondeat Superior**

Defendants present several arguments in support of their claim that they are entitled to

summary judgment on the issue of excessive bail. In addition, they note that Martinez did not

participate in the events as alleged, except to review a police report.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs

to be liable, and cannot be held responsible for a constitutional violation which he or she neither

participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal

quotation marks and citation omitted). "Personal involvement can be shown through allegations

of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d

1195, 1207 (3d Cir. 1988).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 3947, 1948 (2009). In *Iqbal*, the

6

Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 1949.  "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (11th Cir. 2010) (*quoting Iqbal*, 129 S.Ct. at 1949).  The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue.  *Id.*

Under pre-*Iqbal* Third Circuit precedent, supervisory personnel are liable under § 1983 if they participated in, or had knowledge of, violations; if they directed others to commit violations; or if they had knowledge of and acquiesced in subordinates' violations.  *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995).  Recently, the Third Circuit reiterated that a § 1983 claim cannot be premised upon a theory of *respondeat superior* and that, in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant.  *See Brito v. United States Dep't of Justice*, 2010 WL 3259383, at *2 (3d Cir. Aug. 18, 2010) (citing *Iqbal*, 129 S.Ct. at 1948-49 (not published); *Rode v. Dellarciprete*, 845 F.2d at 1207).  The Third noted that personal involvement may be established through: (1) personal direction or actual participation by the defendant in the misconduct; or (2) knowledge of and acquiescence in the misconduct.  *Id.*  The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit.  *See, e.g., Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (stating it is

no longer certain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official). Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal,* at a minimum a plaintiff must prove personal involvement by a defendant to establish liability for the violation of a plaintiff's constitutional right.[3] *Williams v. Lackawanna County Prison,* 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Here, the record does not support a finding of sufficient personal involvement by Defendants in the imposition of bail. Rather, the record reflects that bail was ordered by Delaware Justice of the Peace Court judges. In addition, there is nothing in the record to support personal involvement by Martinez. He merely reviewed a police report submitted by Bingnear. It seems that Martinez was named as a defendant based upon his supervisory position but, as discussed above, § 1983 liability cannot lie under a theory of *respondeat superior.*

After reviewing the record, the Court finds there is insufficient evidence to enable a reasonable juror to find for Johnson on the excessive bail. Nor could a jury find that Martinez violated Johnson's constitutional rights. Therefore, the Court will grant Defendants' Motion for Summary Judgment as to these issues.

---

[3] "'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

8

## C.     False Arrest and Malicious Prosecution

Johnson claims that he was falsely arrested without probable cause and that Defendants

maliciously prosecuted him.  Defendants move for summary judgment on the grounds that

probable cause existed to arrest Johnson on both occasions and he has failed to establish a prima

facie case of malicious prosecution.

Johnson's claims of false arrest and malicious prosecution are closely related.  *See*

*Wallace v. Kato*, 549 U.S. 384 (2007); *Johnson v. Knorr,* 477 F.3d 75, 82 (3d Cir. 2007)

(malicious prosecution); *Groman v. Township of Manalapan*, 47 F.3d 628, 634-36 (3d Cir. 1995)

(false arrest and imprisonment).  False arrests consists of two elements: an arrest was made and it

was without probable cause.  *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.

1988).[4]  "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under

§ 1983 for false imprisonment based on a detention pursuant to that arrest."  *Groman*, 47 F.3d at

636.  Once an individual is arraigned, the unlawful detention forms part of the damages for the

separate tort of malicious prosecution, which remedies detention accompanied by wrongful

institution of legal process.  *Wallace*, 549 U.S. at 389, 390.  To prove malicious prosecution, a

plaintiff must show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal

proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause;

(4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and

---

[4]Although the jury typically determines the existence of probable cause in a § 1983 case,
*Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998), "a district court may conclude that
probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff,
reasonably would not support a contrary factual finding" and may then enter summary judgment,
*Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000) (internal quotation
marks omitted).

(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a

consequence of a legal proceeding." *Johnson,* 477 F.3d at 81-82.

Because lack of probable cause is an element for both false arrest and malicious

prosecution claims, both claims fail if the plaintiff was arrested upon probable cause. *Id.* at 82.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's

knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense

has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco,* 318

F.3d 497, 514 (3d Cir. 2003) (internal quotation marks omitted). "A police officer may be liable

for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable

cause exists." *Wilson v. Russo,* 212 F.3d 781, 789-90 (3d Cir. 2000) (quoting *Malley v. Briggs,*

475 U.S. 335, 341 (1986)). Probable cause "require[s] a belief of guilt that is reasonable, as

opposed to certain," *Wright v. City of Philadelphia,* 409 F.3d 595, 601-02 (3d Cir. 2005), and

"exists if there is a 'fair probability' that the person committed the crime at issue," *Wilson,* 212

F.3d at 789. "[T]he evidentiary standard for probable cause, however, is significantly lower than

the standard which is required for conviction." *Wright,* 409 F.3d at 602. Thus, "it is irrelevant to

the probable cause analysis . . . whether a person is later acquitted of the crime for which she or

he was arrested." *Id.* at 602.

"Whether any particular set of facts suggest that an arrest is justified by probable cause

requires an examination of the elements of the crime at issue." *Id.* Here, in both instances,

Johnson was subject to an order of protection at the time of the contact and, on each occasion,

the undisputed evidence indicated that Johnson violated the no contact orders. During one

investigation, witnesses indicated that Johnson had appeared in person at Roache's residence,

engaged in physical contact with her, and made numerous telephone calls to her – including one while the investigative officer was present. Moreover, once imprisoned, Johnson wrote several letters to Roache and her daughter, one of which could be construed as witness tampering. The undisputed facts of this case are more than sufficient to warrant a reasonable belief that both Provenza and Bingnear had probable cause to seek arrest warrants, arrest Johnson, and initiate prosecution of Johnson for acts taken by him when he violated the no contact orders.

Because the record does not support a finding that probable cause was lacking, Johnson cannot prevail on his malicious prosecution claims. Moreover, the record does not support a finding that Provenza and Bingnear acted maliciously or for a purpose other than bringing Johnson to justice.

For the above reasons, the Court will grant Defendants' Motion for Summary Judgment on the issues of false arrest and malicious prosecution.[5]

---

[5]Defendants also contend that they are entitled to qualified immunity. The two-step test as set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), is not mandatory, but often appropriate when analyzing qualified immunity. *See Pearson v. Callahan*, ___U.S.___, 129 S.Ct. 808, 818 (2009). Under the *Saucier* protocol, first, the Court examines whether or not the alleged conduct, taken in the light most favorable to Johnson, violated a constitutional right. *Saucier*, 533 U.S. 194 at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the allegations amount to the violation of a constitutional right, the Court proceeds to the second inquiry and determines if the right was "clearly established in the specific context of the case." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *see also Saucier*, 533 U.S. at 202 (noting that officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). Courts have the discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *See Pearson*, 129 S.Ct. at 818. In the present case, the record does not support a finding that Defendants violated Johnson's constitutional rights.

**D.**     <u>42 U.S.C. §§ 1985 and 1986</u>

The title of the Complaint refers to 42 U.S.C. § 1985 and § 1986.  Defendants move for summary judgment on the grounds that Johnson has failed to allege any facts demonstrating an agreement or conspiracy among Defendants.

Section 1985 is enlisted when alleging a conspiracy.  The Supreme Court has interpreted § 1985(3) and the second clause of § 1985(2) similarly, finding that each contains language "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge,* 460 U.S. 719, 725 (1983).  It is a well-settled constitutional interpretation that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 726.  Johnson fails to state a cause of action for conspiracy under § 1985.  There is no evidence of record from which one could infer an agreement or understanding among Defendants to violate his constitutional rights, or to discriminate against him under § 1985.

Further, Johnson fails to state a claim under § 1986.  A cognizable 42 U.S.C. § 1985 claim is a prerequisite to stating a claim under § 1986.  *Robison v. Canterbury Vill., Inc.*, 848 F.2d 424, 431 n.10 (3d Cir. 1988); *Brawer v. Horowitz*, 535 F.2d 830, 841 (3d Cir. 1976).  Because the record does not support a finding of a § 1985 violation under any viable legal theory, it also does not support a finding of a § 1986 violation.

For the above reasons, the Court will grant Defendants' Motion For Summary Judgment on the Section 1985 and 1986 claims.

## VI.    <u>CONCLUSION</u>

For the above stated reasons, the Court will grant Defendants' Motion for Summary

Judgment and will deny as moot Johnson's Request for Counsel.  An appropriate Order follows.